# CLARA A. SIMCOE v. ADDISON E. POPE.

123 N. W. (2d) 311.

August 2, 1963—No. 38,676.

*Lindquist, Fraser & Magnuson* and *Philip Orthun,* for appellant. *Meagher, Geer, Markham & Anderson, D. E. Jones,* and *O. C. Adamson II,* for respondent.

OTIS, JUSTICE.

This is an action for personal injuries sustained by a passenger riding in an automobile operated by her son when it collided with a vehicle driven by the defendant. After a verdict in favor of defendant, the court denied plaintiff's motion for a new trial, from which order plaintiff appeals.

On March 6, 1959, the day of the accident, plaintiff asked her son, Ralph Simcoe, Jr., then 17 years of age, to drive her to a National Tea store in Columbia Heights to shop for groceries. Mrs. Simcoe had no driver's license. The vehicle used that day was registered in plaintiff's name because her son was a minor. There was a second car available to the family, but Ralph was the only one who ever drove the particular car which was involved in the accident. Both the son and parents contributed to the purchase price. The son paid for insurance on the car and was the named insured.

On the day in question, at about 5:30 in the afternoon, the Simcoe car was driven south on Central Avenue from 40th Street. In the middle of the block, approaching 39th Street Simcoe made a left turn in an opening between the concrete dividers which separated north and southbound cars. Traffic headed north was particularly heavy during the rush hour. Young Simcoe had stopped his car next to the divider and had waited for a break in the traffic which finally occurred when northbound cars halted for a red light at 40th Street. Two northbound vehicles stopped short of the opening to permit him to make his left turn. The car nearer the concrete divider signaled for Simcoe to proceed in front of them. Simcoe thereupon completed the left turn and was heading east toward the driveway of the shopping area when he was struck on the right side by the defendant who was driving north in a third lane of traffic to the right of the waiting vehicles. The plaintiff, sitting in the front right-hand seat, was injured in the collision.

■ The defendant introduced evidence to show that Ralph Simcoe, Jr., was guilty of negligence which proximately caused the accident, and asserted that this negligence was imputed to plaintiff by virtue of a master-servant, or principal-agent, relationship between them. Plaintiff, on the other hand, contends that as a matter of law the negligence of her

driver cannot be imputed to her and that the court erred in its instructions governing the jury's determination of their relationship.

Before the charge was given, counsel and the court discussed at length the elements to be considered by the jury in determining whether or not a master-servant, or principal-agent, relationship existed. Defendant's counsel conceded for the record that there could be no imputed contributory negligence if Mrs. Simcoe was found not to be the owner of the car. Plaintiff's counsel argued, however, that ownership was not in itself decisive but was only a factor to be considered along with control of the vehicle.

Plaintiff complains that in the charge the court left unresolved the effect of ownership, after expressly requiring the jury to decide that issue. The court first instructed that there was a dispute as to ownership and that registration was only prima facie evidence of title. The jury was then told that it was necessary to determine whether Mrs. Simcoe owned the car because of the question of contributory negligence later to be considered in the instructions. When the court reached that issue he stated that contributory negligence would be imputed to plaintiff only if a master-servant relationship existed between passenger and driver. Specifically the court then added:

"* * * As applied to an automobile, the relation of master and servant exists where there is a use of the automobile which is subject to the control of the master and is connected to the master's affairs. The right of control, and not necessarily the exercise of that right, is the test of the relation of master and servant. The determinative right of control is not merely over what is to be done, but primarily over how it is to be done. Employment in terms of pay is not necessary to the creation of a master and servant situation."

In outlining the parties' claims, the court said it was defendant's contention that plaintiff was the owner of the car in which she was riding and had the right to control its operation; that plaintiff denied these allegations except as to the normal control of a parent over a child, which the court stated was not sufficient to create the relationship of master and servant. The court terminated this part of the instructions in the following language:

"* * * I charge you further that if you find that Ralph Simcoe was the owner of the car which he was driving, such ownership is only one of the elements that may be considered in determining whether the relationship of master and servant existed between plaintiff Clara E. Simcoe and him. I also charge you that the relation of master and servant can exist between a passenger and a driver of an automobile where the passenger does not own the automobile, but has the right of control over the driver's operation of the car. Such right of control being of the nature that I have already stated to you. Remember that the right of control over the driver's operation of the car is the test to determine the relationship or the existence of the relationship of master and servant. Ladies and Gentlemen of the Jury, it is your duty to determine from all the evidence relating to the issue of master and servant whether the relationship existed between Mrs. Simcoe and Ralph Simcoe."

At the conclusion of the charge, plaintiff's counsel excepted to the court's failure to submit an alternative relationship other than that of master and servant, and its failure to advise the jury that even if plaintiff were found to be an owner the jury could determine she had relinquished control. Counsel further took exception to the court's stating to the jury that plaintiff denied ownership, on the ground that this was not a necessary factor to be resolved and that plaintiff took no specific position with respect to it.

In this connection we are of the opinion that the court was justified in stating that a dispute over ownership existed and in directing the jury to determine that issue. Plaintiff's counsel, in the conference with the court prior to charging the jury, specifically stated:

"We think he [Ralph Simcoe] is the actual owner."

Following the charge, plaintiff's counsel declined to concede that Mrs. Simcoe was the owner, reiterating his position that he believed the facts showed the son was the owner in fact but that it wasn't necessary to take a position on this issue. In this state of the record it seems clear that the court had a duty to submit the issue of ownership as an element to be considered in determining the master-servant relationship. The court was careful to state to the jury that ownership was only one factor and stressed the decisive effect of the right of control. The charge would

have been more complete if the court had expressly instructed the jury that a master-servant relationship was not necessarily created through ownership in Mrs. Simcoe, and that they could find the relationship did not exist even if she was the owner. However, viewed in their entirety the instructions correctly and fairly state the applicable law and it was not error to submit the issue of imputed negligence for the jury's determination.

Plaintiff argues that our recent decisions require a holding that neither ownership, family relationship, nor the purpose of a trip creates the master-servant relationship between a passenger and driver, citing Sowada v. Motzko, 256 Minn. 395, 398, 98 N. W. (2d) 182, 184; Tschida v. Dorle, 235 Minn. 461, 468, 51 N. W. (2d) 561, 565; Conner v. Dreyer, 258 Minn. 396, 402, 104 N. W. (2d) 838, 842. However, as we view these decisions, they simply hold that no single element is necessarily decisive. They stress the oft-repeated rule that the test is the right of control over the operation of the vehicle in which the claimant is riding as a passenger.[1] Only in situations such as in the Tschida case, where the right of control was undisputed, does the issue become one of law. The fact that we have held neither ownership, family relationship, nor purpose, standing alone, to be decisive as a matter of law does not mean that a jury might not infer a master-servant relationship from a combination of these factors. The important question is whether the evidence justifies more than one reasonably sustainable inference, thereby creating a jury issue.[2]

Although the question in the instant case is close, we believe that the jury was justified in inferring that a master-servant relationship existed between Mrs. Simcoe and her son. The purpose of the trip was entirely personal to plaintiff, and her son had no independent motive in driving to the destination specified by his mother except to accommodate her.

---

[1] Olson v. Kennedy Trading Co. 199 Minn. 493, 496, 272 N. W. 381, 383; Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 403, 10 N. W. (2d) 406, 412, 147 A. L. R. 945; Rogge v. G. N. Ry. Co. 233 Minn. 255, 262, 47 N. W. (2d) 475, 480; Frankle v. Twedt, 234 Minn. 42, 47, 47 N. W. (2d) 482, 487.

[2] Burdick v. Bongard, 256 Minn. 24, 31, 96 N. W. (2d) 868, 874.

She apparently fixed both the time and the place of the trip. We have noted that a parent-child relationship does not in itself permit an inference of agency[3] and that actual physical control is often difficult to assert by a passenger riding with an operator.[4] But in the instant case we believe the jury could infer that the passenger retained a right of control separate and apart from that which ordinarily exists in the parent-child relationship. We are not to be understood as holding that in every situation where a child accommodates a parent by transporting her to a destination of the parent's choosing, a master-servant or principal-agent relationship is necessarily created. Each case must be decided on its peculiar facts. Our decision does not go beyond holding that the jury could find from the age of the driver, the passenger's financial interest in the automobile, and the limited purpose of the venture that at the time of the collision the driver was subject to the passenger's supervision and control to a degree which imputed the driver's negligence and barred her recovery.

Two assignments of error involve the question of whether defendant was driving in a proper lane at the time of the collision. Counsel for plaintiff offered to prove that following the accident defendant had a conversation with the driver of the second car to the east of the divider who, if permitted to do so, would have testified as follows:

"Mr. Pope asked me who in my opinion was responsible for the accident. I told him that in my opinion he was responsible and at fault because he was driving and passing two traffic lanes in a parking lane. That is substantially the comment that I made."

The witness was prepared to testify that defendant made no response to his statement. Because it contained what appeared to be a legal conclusion, counsel for plaintiff revised the offer to include only the remark: "You were traveling in a parking lane," to which the witness would testify defendant interposed no denial. Objection to the offer was sustained by the court.

---

[3]Ristau v. Riley, 230 Minn. 341, 345, 41 N. W. (2d) 772, 774.
[4]Murphy v. Keating, 204 Minn. 269, 274, 283 N. W. 389, 392; Frankle v. Twedt, 234 Minn. 42, 47, 47 N. W. (2d) 482, 487.

A related assignment of error has to do with a colloquy which occurred during final argument by counsel for plaintiff in which he described defendant as a "lane dodger" and found fault with his driving in the lane to the right of the two stopped vehicles. Defendant's counsel interrupted to object that defendant had an absolute right to use that part of the street, to which plaintiff's counsel rejoined that he understood the court would charge that defendant had a right to be where he was only if he was complying with the applicable statutes. In ruling on the dispute, the court stated:

"You mean that I will not say that he had a right to be negligent. I am going to tell the jury he had a right to be upon that part of the street."

Plaintiff's counsel concluded by assuring the court he was not arguing that defendant had no right to be there, but only that defendant's story wasn't truthful. Counsel then went on to discuss the statute which permits passing on the right only under conditions permitting such movement in safety.[5] The court in his charge also read the substance of that statute. Plaintiff complains that the court's remarks were prejudicial, deprecated his contentions, and diverted the jury's attention from the legal limitations imposed on defendant's right to use the lane in which he was driving.

---

[5]Minn. St. 169.18, subd. 4, provides: "The driver of a vehicle may overtake and pass upon the right of another vehicle only upon the following conditions:

"(a) When the vehicle overtaken is making or about to make a left turn;

"(b) Upon a street or highway with unobstructed pavement not occupied by parked vehicles of sufficient width for two or more lines of moving vehicles in each direction;

"(c) Upon a one-way street, or upon any roadway on which traffic is restricted to one direction of movement, where the roadway is free from obstructions and of sufficient width for two or more lines of moving vehicles;

"(d) The driver of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting such movement in safety. In no event shall such movement be made by driving off the pavement or main-traveled portion of the roadway."

We have not passed squarely on the question of whether silence constitutes an admission by a party who is orally charged at the scene of an accident with being at fault in one or more particulars. We have recognized the doctrine with respect to criminal matters,[6] and a number of other courts have discussed the admissibility of such silence in automobile cases.[7] Some have counseled caution where the statement is one which partakes of a legal conclusion or opinion and is made by a stranger with whom a party is under no obligation to debate liability. In such situations the trial courts must be accorded considerable latitude and discretion.[8]

In the instant case we find no abuse of discretion in the exclusion of the evidence which was the subject of the offer of proof. Whether defendant was driving in a parking lane is a mixed question of fact and law. There is no statutory definition or designation of what constitutes a parking lane, and we are of the opinion that the evidence offered was not of sufficient probative value to render its exclusion prejudicial. In any case, both counsel and the court presented to the jury in considerable detail the facts and law covering the privileges and obligations of drivers who undertake to pass other cars on the right.

Nor do we find any prejudice in the court's ruling with respect to counsel's argument to the jury. While the statement, "You mean that I will not say that he had a right to be negligent," was unguarded and unnecessary, we are not prepared to hold that it had a substantially derogatory or belittling effect on plaintiff's position in view of the comprehensive handling of the subject by counsel later in his argument and the full treatment of the law given by the court in his charge.

Affirmed.

---

[6]State v. Quirk, 101 Minn. 334, 339, 112 N. W. 409, 411.
[7]See, Annotation, 70 A. L. R. (2d) 1099.
[8]Klever v. Illiott, 212 Ore. 490, 320 P. (2d) 263, 70 A. L. R. (2d) 1094; Greenberg v. Stanley, 30 N. J. 485, 498, 153 A. (2d) 833, 839; Jasmin v. Parker, 102 Vt. 405, 414, 148 A. 874, 877.